UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Dale J. Thomforde,

        Plaintiff,

v.

        Civ. No. 02-4817 (JNE/FLN)
        ORDER

International Business Machines Corporation,

        Defendant.

---

Celeste Culberth, Esq., Culberth & Lienemann, LLP, appeared for Plaintiff Dale J. Thomforde.

Holly M. Robbins, Esq., Jerry Snider, Esq., and Daniel Prokott, Esq., Faegre & Benson LLP, appeared for Defendant International Business Machines Corporation.

---

This is an action by Dale Thomforde against his former employer, International Business Machines Corporation (IBM). Thomforde claims that IBM discriminated against him in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634 (2000). The case is before the Court on IBM's Motion for Summary Judgment. For the reasons set forth below, the Court denies the motion.

## I.   BACKGROUND

In 1973, IBM hired Thomforde as a Junior Engineer. Over the course of the next twelve years, he received several promotions. First, he became an Associate Engineer. Next, he became a Staff Engineer. Finally, in 1985, IBM promoted Thomforde to Advisory Engineer, the position he held until his termination in 2001.

For several years prior to 2001, Thomforde's annual performance reviews contained satisfactory ratings. IBM evaluates its employees on a four-point scale, with one being the highest score and four being unsatisfactory. A rating of one, two, or three is satisfactory. With

the exception of 1998, Thomforde received a rating of three from 1995 to 2000.  In 1998, he received a rating of two.

In 1995, Thomforde's rating meant "more is expected."  The overall assessment explained:

> [Thomforde] accomplishes his assignments with good quality and brings a solid processor technical base to his work.  [He is] being rated a '3' because [he] need[s] to contribute more output than [he does] at an Advisory level, and because [he] need[s] to put more effort into engaging the processor organization to share [his] experience[s] in more of a 'self directed' mode.

In 1996, Thomforde's rating meant that he had "achieved some commitments."  The overall assessment elaborated:

> In 1996, [Thomforde's] responsibilities tended to require interactions outside the processor development area greater than most in the department.  His sincerity and professionalism enabled his peers to trust his role although his reputation regarding technical currency is eroding.
>
> He tried to respond to requests in a timely manner and if he was unable to respond by himself, he always found the appropriate expert instead. . . .
>
> [He] needs to do more. . . .  [He] needs to expect more of himself too.
>
> [He] is respected by his peers and is a valued member of . . . and the . . . project.  He listens to others and consistently puts the team's goals first.

Thomforde's three rating in 1997 again meant that he had "achieved some commitments."  The overall assessment acknowledged his improved performance:

> [Thomforde] has successfully turned the corner regarding increasing his contribution level to the . . . teams.  [He] needed to interface with multiple organizations across multiple sites on closing issues related to . . . .  Some requests were reasonable, some were not.  [He], as always, resolved the requests professionally and thoroughly.  Sometimes his dependence on others hindered his deliveries. . . .
>
> . . . .
>
> [He] is on a path to become more pro-active with driving closure of his dependencies and produce results commensurate with his level.

In 1998, Thomforde's rating of two indicated that he had "achieved commitments." The overall assessment noted that Thomforde had done an "excellent job" on projects in the early part of the year and that he was "respected for the accuracy in these documents." During the later part of the year, the overall assessment stated that Thomforde's team had made "[a]ll deliverables . . . to [a foreign team] on schedule" and that the foreign team was "delighted with the Rochester response to [it] and with [his] role as [its] main technical interface."

In 1999, Thomforde received a three rating, meaning that he had "achieved some/most commitments." The overall assessment noted that he had provided "solid" support to the foreign team. It praised his work as "accurate" and acknowledged that he had "a large network to use as a reference." Thomforde's manager expressed his hope "to see [Thomforde's] manner continue to move in one of an assertive role [versus] a reactionary one." Having recently asked Thomforde to join a lab team, the manager envisioned Thomforde "improv[ing] his competitiveness with respect to [his] peers in this visible role."

In 2000, Thomforde's performance review indicated that he had "achieved some/most commitments." His manager in 2000, Mary Weber, stated that Thomforde had "done a good job of meeting some of his commitments this year." She noted that his design work was "much better" than his lab work. With regard to Thomforde's lab work, Weber stated that he had "learned the tools slowly and did not keep up the pace of debug that is expected at the Advisory level." She encouraged Thomforde to expand his influence:

> Relative to peers at the advisory level, [Thomforde] can further improve his results by being more energetic in his efforts and accomplishing more. From a TEAM standpoint, [he] worked well with peers. He can expand his influence as an advisory engineer [by taking] initiative to helping others more. Team members enjoy working with [him] and would welcome his help.

Weber closed the overall assessment by thanking Thomforde for his results in 2000. She signed the review on January 22, 2001.

Within the next few months, Weber's supervisor, Andrew Schram, received a MIS—or management initiated separation—target from his supervisor, Steve Lewis.  In late March 2001, Schram met with Thomforde.   During that meeting, Schram stated that Thomforde's performance was marginal or needed to improve.   In late April 2001, Weber informed Thomforde that his performance was declining, that he would receive an unsatisfactory rating if he declined IBM's offer of an individualized enhanced separation agreement (IESA), and that he would be placed on a performance improvement plan if he refused to resign.

On May 18, 2001, Schram gave Lewis a status report about the MIS.  Schram mentioned six individuals, including Thomforde, as candidates for MIS.  As to Thomforde, Schram's update noted:   "Offered IESA timeout date is May 30, will be rated Unsat if he does not take the package."  Schram expected two others to receive IESA offers within a week and unsatisfactory ratings.  He noted that the remaining three candidates were "very recent hires" who "got good increases this year so the story will need to be 'created'."  He closed the update:  "I am comfortable we are doing the right thing with my current 3 MIS candidates.  Going beyond that will be a bit more arbitrary.  We will work hard to execute on these three."

Approximately two weeks later, Thomforde rejected the IESA and Weber gave him an unsatisfactory rating.  The overall assessment states:

> [Thomforde's] results for the time period from 1/01/01 until 5/31/01 are being rated as Unsatisfactory at the Band 8, Advisory Engineering level.  During this period, [he has] been a member of the . . . team. . . .  The . . . design work has been good quality and [he has] good working relationships with the team. However, there are several areas which [he is] not delivering results that would be expected for an Advisory Engineer.  Insufficient results in these areas are the reason why [his] performance is being rated as unsatisfactory.  These areas are: 1) insufficient leadership demonstrated for the advisory level.  2) insufficient initiative demonstrated for the advisory level.  3) Learning and mastery of the . . . tools [were] slower than expected for the advisory level. . . .  During this assessment period, the expectations for results have increased and since you have

4

not increased your results in these areas, your performance is being rated as Unsatisfactory.

Thomforde appealed the unsatisfactory review, which IBM ultimately upheld.

During Thomforde's appeal, Schram noted on Thomforde's unsatisfactory review that Thomforde "must be pushed." At his deposition, Schram explained the notation: "My assessment that [Thomforde] would not take—would not avail himself of the IESA program, that he was going to fight the appraisal or dispute our appraisal rating." Asked "in what manner" Thomforde must be pushed, Schram responded, "[Thomforde] would not resign from IBM."

Before the MIS could be carried out, Schram learned in June 2001 that IBM was planning to conduct an involuntary termination program, which came to be known as the Server Group Resource Action (SGRA). IBM employed two methodologies to select employees for the SGRA: Work Elimination and Staff Reduction. IBM defined the former as:

All positions in a facility, organization, skill group or project are substantially eliminated.

All or substantially all work will no longer be done.

IBM defined Staff Reductions as:

Decrease in the number of jobs in an organization—must reduce number of incumbents.

Required skills are essentially unchanged.

Work remains the same, but a decrease in the number of jobs occurs due to affordability, mission change, service demand, etc.

IBM exempted "University hires" from Staff Reduction if their date of hire was within nine months of the SGRA's planned notification date. Schram was directed to terminate the employment of seven engineers using Staff Reduction. On June 27, 2001, Schram stated that Thomforde would be among those terminated without regard to the outcome of Thomforde's appeal of the unsatisfactory performance review. On July 24, 2001, Thomforde learned that

IBM had decided to terminate his employment as part of the SGRA.  His final day at IBM was August 24, 2001.  He was fifty years old.

IBM ultimately terminated 338 employees in various locations as part of the SGRA.  Five engineers supervised by Schram lost their employment in the SGRA.[1]  From June to September 2001, IBM hired eleven engineers supervised by Schram.  Their ages ranged from twenty-two to twenty-six years.

After his termination, Thomforde brought this action.  Earlier in this litigation, the Court granted a motion for summary judgment by IBM because Thomforde had executed a release, and the Eighth Circuit reversed and remanded.  *Thomforde v. Int'l Bus. Machs. Corp.*, 406 F.3d 500, 503-05 (8th Cir. 2005).  IBM now moves for summary judgment.

## II.   DISCUSSION

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party "always bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party satisfies its burden, Rule 56(e) requires the nonmoving party to respond by submitting evidentiary materials that designate "specific facts

---

[1]     IBM asserts that six engineers supervised by Schram were terminated in the SGRA.  Five of the six were terminated on August 24, 2001.  The sixth was terminated on February 22, 2002. A Summary Plan Description of the SGRA states that "no departure date will be later than October 31, 2001 except for employees" receiving certain benefits.  In the absence of evidence indicating that the exception to the October 31 departure deadline applies to the employee terminated on February 22, the Court assumes that the SGRA included five engineers supervised by Schram.

showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Under the ADEA, it is unlawful for an employer "to discharge an individual . . . because of such individual's age."  29 U.S.C. §623(a)(1).  The parties agree that the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies here.  *See Hitt v. Harsco Corp.*, 356 F.3d 920, 924 (8th Cir. 2004); *Fast v. S. Union Co.*, 149 F.3d 885, 890 (8th Cir. 1998).  Under this framework, Thomforde must first establish a prima facie case of discrimination.  *See Hitt*, 356 F.3d at 924.  IBM must then articulate a legitimate, nondiscriminatory reason for its actions.  *See id.*  Thomforde must then demonstrate that IBM's proffered justification is a pretext for discrimination.  *See id.*

A.    **Prima facie case**

To establish his prima facie case, Thomforde must show that:  (1) he was at least 40 years old; (2) he was performing his job at a level that met IBM's legitimate expectations; (3) he was terminated; and (4) age was a factor in IBM's decision to terminate him.[2]  *See id.*; *Chambers v.*

---

[2]    Thomforde contends that the second prong of his prima facie case requires only that he demonstrate his qualifications for the position from which he was terminated.  *See Chambers v. Metro. Prop. & Cas. Ins. Co.*, 351 F.3d 848, 855 (8th Cir. 2003).  The Eighth Circuit has repeatedly held that a plaintiff in a discriminatory discharge case must establish that he was performing his job at a level that satisfied his employer's legitimate expectations to demonstrate his qualifications.  *See Erenberg v. Methodist Hosp.*, 357 F.3d 787, 793 (8th Cir. 2004) (concluding that terminated plaintiff who was not performing her job at a level that satisfied employer's legitimate expectations failed to show her qualifications for position from which she was discharged); *Whitley v. Peer Review Sys., Inc.*, 221 F.3d 1053, 1055 (8th Cir. 2000) ("In determining whether or not [the plaintiff] was qualified for her position, we do not simply examine her ability to perform.  Rather, [the plaintiff] must demonstrate that she was actually performing her job at a level that met her employer's legitimate expectations."); *Miller v. Citizens Sec. Group, Inc.*, 116 F.3d 343, 346 (8th Cir. 1997) ("The district court did not err in

*Metro. Prop. & Cas. Ins. Co.*, 351 F.3d 848, 855 (8th Cir. 2003). IBM does not dispute that Thomforde was more than forty years old when it terminated him. It asserts that it is entitled to summary judgment because Thomforde cannot satisfy the second or fourth prongs of his prima face case.

        *1.     Whether Thomforde's performance satisfied IBM's legitimate expectations*

"The standard for assessing performance 'is not that of the ideal employee, but rather what the employer could legitimately expect.' The fact that an employee meets some expectations, however, does not mean that she meets the standard if she does not meet other significant expectations." *Calder v. TCI Cablevision of Mo., Inc.*, 298 F.3d 723, 729 (8th Cir. 2002) (quoting *Keathley v. Ameritech Corp.*, 187 F.3d 915, 920 (8th Cir. 1999)). The Court does not sit as a super-personnel department to second guess the business decisions of employers. *Id.* at 729-30. The Court's task is to determine whether a genuine issue of material fact exists as to whether Thomforde was performing his job at a level that satisfied IBM's legitimate expectations. *See Hindman v. Transkrit Corp.*, 145 F.3d 986, 991 (8th Cir. 1998).

Briefly, the record reveals that Thomforde received a satisfactory performance rating for his work in 2000. His manager thanked him for his results that year. A few months later, his managers informed him of deficiencies in his performance. In the month leading up to Thomforde's unsatisfactory rating, Weber described his performance as "heading toward unsatisfactory." On May 21, 2001, she nevertheless acknowledged that Thomforde had demonstrated the expected initiative for several weeks and that he had "done an acceptable job for an advisory level engineer" on several projects. At the end of May, however, Weber rated his performance unsatisfactory based in part on his alleged failure to demonstrate sufficient

___

articulating this element as performance of the job at a level that met the employer's legitimate expectations.").

initiative.  The unsatisfactory review itself acknowledges that Thomforde's "design work has been good quality" and that he had "good working relationships with the team."  Thomforde's relatively recent satisfactory performance review and the inconsistent statements about his performance after his 2000 review lead the Court to conclude that a genuine issue of material fact exists as to whether Thomforde was meeting IBM's legitimate expectations.  Viewing the record in the light most favorable to Thomforde, a reasonable factfinder could conclude that Thomforde was performing his job at a level that satisfied IBM's legitimate expectations. Accordingly, the Court rejects IBM's contention that Thomforde cannot demonstrate the second prong of his prima facie case.

> 2.      *Whether age was a factor in Thomforde's termination*

A showing that age was a factor in a plaintiff's termination may take many forms.  *Holley v. Sanyo Mfg., Inc.*, 771 F.2d 1161, 1166 (8th Cir. 1985).  "[E]ither statistical evidence (such as a pattern of forced early retirement or failure to promote older employees) or 'circumstantial' evidence (such as comments and practices that suggest a preference for younger employees)" may satisfy the fourth prong of the plaintiff's prima facie case.  *Hanebrink v. Brown Shoe Co.*, 110 F.3d 644, 646 (8th Cir. 1997); *see Chambers*, 351 F.3d at 856; *Holley*, 771 F.2d at 1166.  In this case, there is circumstantial evidence that satisfies the fourth prong of Thomforde's prima facie case.  For example, Jennie Dinneen, the Human Resources Partner who assisted Lewis with the SGRA, testified that IBM's project office had expressed concerns about the ages of employees selected for the SGRA or other resource actions.  According to her, the project office expressed a concern that "we had a larger representation of people over 40 years than was desirable."  Accordingly, the Court rejects IBM's assertion that Thomforde cannot establish the

fourth prong of his prima facie case. *See Kypke v. Burlington N. R.R. Co.*, 928 F.2d 285, 287 (8th Cir. 1991).

**B.      IBM's legitimate, nondiscriminatory reason for Thomforde's termination**

IBM offered a legitimate, nondiscriminatory reason for Thomforde's termination: "IBM selected Thomforde for termination in the SGRA because of his well-documented poor performance." IBM has satisfied its burden. *See Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 777 (8th Cir. 1995).

**C.      Pretext**

Because IBM satisfied its burden, Thomforde can avoid summary judgment only if the evidence considered in its entirety (1) raises a question of material fact as to whether IBM's proffered reason is pretextual and (2) creates a reasonable inference that age was a determinative factor in IBM's decision to terminate Thomforde. *See Kohrt v. MidAmerican Energy Co.*, 364 F.3d 894, 897 (8th Cir. 2004); *Mayer v. Nextel W. Corp.*, 318 F.3d 803, 807-08 (8th Cir. 2003). In short, Thomforde must demonstrate that IBM's proffered reason is a pretext for illegal discrimination. *Kohrt*, 364 F.3d at 897-98.

Thomforde first argues that IBM's proffered reason is pretextual because the SGRA was not a bona fide reduction in force. The record reveals that Schram continued to hire engineers after the SGRA's announcement. From June 2001, when he learned of the SGRA, to September 2001, the month after departures started, Schram added eleven engineers to his organization. Their ages ranged from twenty-two to twenty-six years. They received their offers months before the SGRA's announcement, and they were hired as entry-level engineers. IBM decided to honor the outstanding offers to protect its recruiting relationships. Thomforde has not offered any evidence to refute IBM's legitimate interest in preserving its ability to recruit. Accordingly,

the Court concludes that Thomforde has not offered sufficient evidence to demonstrate that the SGRA itself is pretextual. *See Pippin v. Burlington Res. Oil & Gas Co.*, 440 F.3d 1186, 1193-94 (10th Cir. 2006).

Thomforde next argues that IBM's proffered reason for his termination—his alleged poor performance—is pretextual. "[E]ven capable employees are released when an employer is down-sizing." *Hutson*, 63 F.3d at 777. "However, even within the context of a legitimate reduction-in-force, an employer may not fire an employee because of his age." *Yates v. Rexton, Inc.*, 267 F.3d 793, 800 (8th Cir. 2001). As set forth above, there is a genuine issue of material fact as to whether Thomforde was performing his job at a level that satisfied IBM's legitimate expectations. Several months before his termination, Thomforde received a satisfactory evaluation, and his manager thanked him for his work. Thomforde's alleged performance decline approximately coincides with Schram's receipt of the MIS target. Following Thomforde's refusal to resign, Schram stated that Thomforde needed to be "pushed." After the SGRA's announcement, Schram stated that Thomforde would be terminated in the SGRA without regard to the results of the appeal of the unsatisfactory performance review. In connection with IBM's concerns about the number of people terminated who were more than forty years old, a reasonable factfinder, viewing the record in the light most favorable to Thomforde, could conclude that IBM's proffered reason for his termination is a pretext for age discrimination. *See Fisher v. Pharmacia & Upjohn*, 225 F.3d 915, 922-23 (8th Cir. 2000). Accordingly, the Court denies IBM's motion.

### III.    CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT

IS ORDERED THAT:

1.    IBM's Motion for Summary Judgment [Docket No. 79] is DENIED.

Dated:  June 14, 2006

s/  Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge
